Good morning. Good morning, Your Honors. May it please the Court. My name is Keith Hildendecker, and I'm from the Office of the Federal Public Defender in Arizona, and I represent the petitioner in this case, Dominic Adams. Mr. Adams' proposed second or successive Section 2255 motion makes a prima facie showing that the Supreme Court has made its 2012 decision in Miller v. Alabama retroactive to cases that are final on collateral review. This Court should therefore authorize him to file it in the district court so that the district court can make a fuller determination of the threshold authorization questions and possibly also proceed to the merits. So you do agree, then, you have to make at least a prima facie case there's a constitutional question here? Your Honor, at this stage, that's all I have to do. All I need to do is persuade this Court that the motion makes a prima facie showing that it qualifies for authorization under one of the statutory criteria. And here, the only criterion that I'm Let me ask you a couple of questions, then. Was there a mandatory sentencing scheme in place here? The sentence in this case was imposed Would you answer my question? Was there a mandatory sentencing scheme in place here? No, Your Honor. There was not. All right. Did the judge consider all of the 3553A factors? Your Honor, I don't believe that he did. And did he consider some of them? He did consider some of them, yes. It's your theory that this is a life sentence based upon This is a 43-year sentence, right? Which I contend is the functional equivalent of a life sentence, yes. And is that because we have to We would have to assume that this individual, Mr. Adams, has a diminished life expectancy? The only The only evidence that I presented at this stage is the conclusion of the Sentencing Commission, which, after, you know, in its expertise, after considering the life expectancy of all Federal prisoners, treats a sentence of 470 months as the functional equivalent of a life sentence. And here my client got 516. Is that Does that mean the answer is yes? Yes. Okay. The answer is yes. All right. So could we get back to I have the same problem that I think it sounds like Judge Smith has as to whether or not this is mandatory. It strikes me that Judge Rule thought that he was pretty well aware that he had discretion. That's how the transcript reads to me. Why am I wrong about that? I agree that that's how the transcript reads, yes.  So why shouldn't we decide that that's that he was exercising his discretion  Because, Your Honor, I don't believe that the question about whether whether Judge Rule was in fact exercising his discretion is before the Court at this time. Well, that's Then let's take a step back, because it seemed to me at the outset of your argument you were trying to avoid the merits, frankly, and wanted to really suggest that all you have to do is, for purposes of this second petition, is to make a prima facie showing regarding retroactivity. Is that your position? That's my contention, yes, Your Honor. All right. And so because I believe that the Supreme Court has made Miller v. Alabama retroactive, I believe this Court should allow the district court to make a fuller exploration even of the threshold questions that you and Judge Smith have raised about whether there was in fact a mandatory statement. So when Judge Smith asks you whether or not there's a colorable showing here and asks whether you have to make a colorable showing, of course, he's talking about the merits. But you're asking us to make a retroactive decision in a case where, even if we think that there's no possibility that Mr. Adams is going to find relief under this new Miller case? Yes, Your Honor, because that's the way Congress structured the authorization process when it enacted AEDPA. The first step in the authorization question is to come to the court of appeals and say, does this motion that I propose to file make a prima facie showing of the statutory criteria for authorization? One is newly discovered evidence of innocence. The other one is a retroactively applicable new rule of law. Here, I believe that the motion makes a prima facie showing that Miller v. Alabama has been made retroactive. And that's the only question that can get this case in front of the district court. Are there any distinguishing characteristics between this case and Miller? I think that's why I tried to have you think about mandatory life without parole under Miller. Well, the most evident. I mean, that's one of the distinguishing characteristics. Are there others? I don't believe there are any others. To be straight with me, are there other distinguishing characteristics? The other distinguishing characteristic that Your Honor perhaps may be alluding to is the fact that nominally my client did not get a sentence of life without parole. He got a sentence of 43 years, which I contend is the functional equivalent of a sentence of life without parole. So you're saying, first of all, there's no mandatory life, and second of all, there is a sentence that is not that, but because you can argue it's the functional equivalent, then that makes it okay? Is that what you're saying? I contend that because this is the functional equivalent of a life sentence, it warrants further exploration by the district court. Perhaps one of the inquiries that the district court would undertake is whether or not there's enough actuarial evidence that I could present to show that 43 years really is the functional equivalent of a life sentence. So when I look at Bell v. Uribe, now I say Uribe only because Uribe used to work, used to play for the Giants. Now he's good for the Dodgers. And I don't know how you say it exactly, but Uribe, we talked there about Miller v. Alabama, didn't we? Yes, Your Honor. And didn't we just say we don't really need to think about that case because the possibility of parole? And then we said, therefore, it wasn't a mandatory sentencing scheme that afforded the sentencing judge no discretion, and the sentencing judge did consider mitigating and aggravating factors, and therefore, it wasn't a Miller violation. That's what we said in Bell v. Uribe, didn't we? Your Honor, the holding that I raise to that point is that I don't think there's anything wrong with asking you, isn't that what we said in Bell v. Uribe, is because I think you have to answer that question, don't you, Counselor? This panel can't undo Bell, but we'd have to send it up. But Bell didn't address Federal law. Bell construed the California statute that says the default sentence here is life with or without the possibility of parole. And in that context, the panel that decided Bell said there was no Miller violation because of California's sentencing scheme. This is Federal sentencing, and I think that allows this Court to depart from Bell if, in its wisdom, it feels that that's appropriate. So we're not stuck with whatever happened in Bell, you're suggesting? I suggest that this panel isn't bound by Bell. And if, Your Honor You wouldn't suggest that this is really a Caballero, would you? I don't think that this case is similar to Caballero because Mr. Miller, unlike the defendant in Caballero, was convicted of a homicide crime. Caballero doesn't involve a homicide crime. Well, and there in Caballero, I'll say it the way you said it, he was sentenced to 110 years to life, wasn't he? I believe that was the sentence. It was very clearly above his projected life expectancy. And if I may, I'd like to reserve the balance of my time for rebuttal.  Unless Judge Fernandez has questions. No. Thank you. Good morning. May it please the Court, I'm Sandra Hansen, Assistant United States Attorney from the District of Arizona, representing the government this morning. As the Court has already noted, Miller v. Alabama prohibits an imposition of a mandatory life without parole sentence for those under the age of 18 at the time of their crimes as a violation of the AIDS Amendment prohibition on cruel and unusual punishment. In this case, Dominic Dean Adams received neither a life sentence nor was it imposed mandatorily. Counsel, could I ask you, just because we have some visitors, some students visiting today, to just take one minute, just to maybe not even that, and explain a little bit about the underlying facts of the case. Yes. Dominic Dean Adams, as the Court noted at sentencing, had an extensive criminal history. As Judge Rohl noted, when the defendant was in his early years, he began to use substances. Judge Rohl concluded that he had an abysmal home life, certainly. However, his criminal behavior continued. At the age of 13, he fired at a school bus that was loaded with children. He actually hit the school bus. His girlfriend was on the school bus at that time, and he gave conflicting rationales for why he shot. While he was in juvenile supervision, he was caught in a vehicle with 100 pounds of marijuana and was convicted in Arizona State Court for possession with intent to distribute marijuana. While on juvenile supervision, he was allowed, Federal supervision, he was allowed to reside at the halfway house and received a weekend pass so that he could attend his sister's high school graduation. He failed to return, and it was while he was on absconder status from the halfway house that he went to the home of the 17-year-old victim, knocked on the door, and when the victim answered the door, he shouted some gang words and shot him at point blank range where the victim's body actually had stippling and burning on his skin. As the defendant left that residence, there was a man in the neighborhood who was trying to flee and get away. Dominic Dean Adams shot repeatedly, shot him in the back. The second victim was able to get to his nearby home where medics were unable to identify. He died. Fended through the roof, the gun on a roof of a house in the area. After he was arrested, he was placed in custody. Excuse me. And while in custody, a poem was discovered in his cell that was, along with his homework, that had gang-related and other security issues. And when I say security, I mean security in terms of the safety of the facility. So Mr. Adams was then transferred to a different juvenile facility where he and another juvenile offender planned to overpower two corrections officers. They singled out the two that they wanted, overpowered them, threatened them, used the cell phone. Mr. Adams used the cell phone of both of the corrections officers and told them that bad things would happen. They were both assaulted. Mr. Adams then called his grandfather for a ride. The grandfather's vehicle was used, but his dad and his brother were in the vehicle. So when he was ultimately convicted then of the two homicides at age, was it 15? Yes. All right. And assaulting two Federal officers as well? At age 16, yes. Okay. And then he received this sentence. He was waived up after I think a four-year – forgive me, a four-day hearing. Was that conducted by Judge Rohl? Yes. Judge Rohl presided over the four-day hearing. All right. And then he was convicted of those crimes and received this 43-year sentence that we're talking about today. Yes, Your Honor. Correct? Okay. So what is your response, counsel, to opposing counsel? And thank you for that. I appreciate it. I hope it's interesting to the students. What is your response to opposing counsel's argument that we should rule on retroactivity even if we think that there isn't a prima facie case for application of Miller here? As a simple gatekeeping matter, what the defendant is asking you to do today is to say that any time a case is decided by the Supreme Court, you could use that, even if you don't fit the criteria, in order to get a second or successive habeas. In this case, the Supreme Court was very clear, saying that it had to be a mandatory life-without-possibility-of-parole sentence. In this case, it was a sentence that came about as a result of plea negotiation. Initially, the defendant was charged by way of a juvenile information with two counts of murder in the first degree, as well as two counts of assault on a Federal officer. After the court transferred the status of the case to adult court, the parties entered into an agreement, which was very advantageous to the defendant, where the range of sentence would be from 22 years at the bottom end to 43 at the top end for two counts of second-degree murder and two counts of assault on a Federal officer. The agreement did not address the term of juvenile supervision, which ultimately, Judge Rohl, terminated unsuccessfully. So the Court had wide latitude in considering the factors, and it's clear from the record in this case, Judge Rohl looked at everything in the record. He presided over the four-day transfer hearing. He was familiar with the case because the case involving the shooting at the school bus was one that had been assigned to him, although a visiting judge imposed the sentence. As Judge Rohl stated after reviewing the record, I am not at all unmindful of the significance of sentencing a 17-year-old to 43 years in prison, but if there was ever a case that warranted it, this is that case. The defendant cannot meet his prima facie showing that Miller v. Alabama applies to him, and as such, I respectfully request this Court deny his motion and dismiss the petition. Let me ask you a question which has concerned me just a little bit. Our Court on December 5th, as you remember, ordered this case to be held in abeyance pending the outcome of Del Bosque. That's the way I say it. It may not be that. And Bourgeois. Mm-hmm. Should I hold this in abeyance still? No, because that had to be ---- if I could have just one moment. Yes. The Court decided, as you previously discussed this morning, the ---- Well, as I understand it, Del Bosque and Bourgeois are still under consideration. Oh. I'm sorry, Your Honor. I misspoke. I was referring to the first matter that caused this case to be. I think they're the two cases out of Washington, aren't they? And I think they are still in the hopper. We don't have an answer. So there was a decision made earlier that this case ought to be stayed, and hence our question. Well, certainly you could do that, but I don't believe that that's necessary. When this petition was initially filed, the Court stated the matter pending resolution of another case that was before this Court, Freelander v. United States, and that And in that case, the panel concluded it dealt with a defendant who was sentenced to life in prison for a murder charge and a concurrent term of 20 years for the assault charge, and the opinion states that we need not decide whether Miller announced a new retroactive rule of constitutional law, because even if it did, Freelander's application would fail because he couldn't ---- that's the end of the quote ---- because he couldn't meet the test. So I don't think this Court needs to hold it in advance. Thank you. Any other questions? No. All right. Thank you very much, Counselor. We appreciated your argument. Counselor, I think you have just a little bit more time that you save for rebuttal. Your Honor, if I may, I'd like to clarify a little bit about what's going on in the case that I flagged in a notice-related cases. The Washington cases have a petition pending in Federal court, and they also might receive Miller relief from the State courts. Those are 2254 cases, and obviously, if the Washington State courts grant the Petitioners in Del Bosque and Bourgeois a relief, there's no need for a Federal court to make any kind of ruling, even on the retroactivity of Miller. The same is true with the Nevada case Castillo v. McFadden. There is a State habeas petition pending before, I think, the Nevada Supreme Court in that case, which may decide whether retroactivity applies. And the same thing is true about Freelander, for that matter. Freelander, from what I understand in discussions with Mr. Freelander's counsel, is that Mr. Freelander had actually been getting parole hearings, and so it wasn't necessary to decide whether Miller was retroactive, because it was patently clear that he wouldn't qualify. I'm not before the Court taking any position about whether it wants to hold this case in advance, pending the cases I just mentioned or some other case. I just wanted to give the Court a little bit more information, what I know about those cases. Well, we appreciate that, Counsel, very much. If there are no further questions, I'll thank the Court for hearing my argument this morning. Thank you. Seeing no other questions, then Case 13-72158, Adams v. United States of America, is hereby submitted. Thank you very much. Court is adjourned.
judges: FERNANDEZ, SMITH, CHRISTEN